We'll hear oral argument this morning is number 2008-3308, Hayward v. Office of Personnel Management. Ms. Shaw? Yes. I pronounced it correctly. Oh, good. I often don't do that. We'll wait, just wait for a moment until opposing counsel gets seated. And you've reserved five minutes for rebuttal, is that correct? Yes, I have. Okay. Well, you can begin whenever you're ready. Your Honors, if the Court please, my name is Barbara J. Shaw, and I represent the petitioner Linda Hayward in this matter. This is a petition for review of a decision of the Merit Systems Protection Board reversing a decision of the administrative law judge which granted Mrs. Hayward survivorship benefits in Jack N. Hayward's civil service retirement system pension. Your argument, or at least one of your arguments, is that the 1992 version of the OPM regulations ought to apply. Yes. That those were less stringent, those imposed less stringent requirements, and that they didn't include this what I would call a citation requirement. That's correct. And the government doesn't seem to dispute that under the 1992 regulations this would be a qualified order. So what concerns me is this order was entered in 1990. Why should the 1992 regulations be read as being retroactive to an order that was entered two years earlier? How could somebody, how could the parties, how could the state court possibly anticipate the later regulations when the order was entered? Well, the matter of the entry of the order had to do with the preparation of it by the expert. My concern is that 1990 this order was entered. How is somebody supposed to anticipate at that point what the 1992 regulations are going to look like? It sounds to me as though the government's argument is to make these 1992 regulations retroactive to 1990 and that that's not generally permissible. You can't do that. Your Honor, I have no idea how a state court could have anticipated regulations that were promulgated two years later. The order that was entered was entered by the state court following what the expert believed at that time was an appropriate form. It's clear that the QDRO form, the Qualified Domestic Relations Order form, well, at that time was essentially the only form that apparently that expert used, but it did provide for a survivor benefit annuity or a survivor benefit. I don't think the government is contesting that if the 1992 regulations applied that the order qualified, that it was good enough under cases like Fox and so on. But what they're trying to do is to say, oh, no, no, we want to apply the later regulations to an order that was entered in 1990, and I'm expressing concern about that. Right. Well, of course I have concern about that as well. Obviously, the expert who prepared this order was working with the knowledge that he had at the time, and the state court judge that entered the order and, well, of course, the Pennsylvania Superior Court didn't rule on the orders until in the 2000s, but they certainly could not have anticipated a change in the regulations. Who reviewed the order on behalf of Ms. Hayward? Was there any review by counsel of the order at that point when it was issued? When you say was there a review, I was her counsel at that time, Your Honor. To say that counsel understood all of the provisions of what should have been in a qualifying order, a court order qualifying, clearly we relied upon what our experts prepared for us, and it was actually a very new concept. I believe it was only in the late 80s that Pennsylvania law began providing for division of pension benefits in domestic relations orders. So, yes, to the extent it was reviewed, I reviewed it. What experts were you relying upon? The expert who prepared this order. This order was prepared by an expert paid by Mrs. Hayward. There was testimony about that given before the administrative law judge. Ms. Shulman, let me ask you one question. I was, and this is a fact issue, and I was trying to figure out, were there one or two orders here? There were two orders. There were two orders. Now, we only had, there was an order that spoke to the military, Mr. Hayward's military benefits, and then there was an order that spoke to his civilian benefits, correct? Yes, that's correct. Now, are the orders we have in the file one order, okay, the March 26, 1990 order. Were there two orders entered on March 26? There were, in fact. Where is the other one? In the pretrial submissions before the administrative law judge. At the board? Yes, at the board. At the pre-hearing conference, the board asked that the military pension domestic relations order also be a part of the record, and it was submitted, and I believe it's exhibit N, and it is a part of the record. But it's not in our appendix. It's not in your appendix. That's correct. How, and obviously the record, that order would have to be reviewed itself, but to what extent does that order contain different language from the one that we have before us, as best as you can tell? It identifies it as referring to a military pension and not the civil service retirement system pension. So when it identifies the plan to which the order applies, and assuming the expert used the same number 18, he applied it as the military pension, as opposed to at number 18. In this order, he referred it as the civil service retirement, pardon me, the civil service retirement pension plan, I believe, is how this expert referred to it. Now, for example, the order that we have, which is at 125 of the joint RF2 refers to is a participant in the civilian service retirement system, the plan. Yes. Are you saying that in the military order that language is different? Yes, I am, Your Honor. It would be helpful for us to have had this other order in front of us, because obviously it may make some difference in the sense that if there's confusion as to what one order says, if you have one order that everybody says is for the military side of the issue and another for the civilian side of the issue, then maybe what appears to be ambiguity ceases to be ambiguity. Your Honor, you'll have to excuse me with the fact that I know that the Pennsylvania Superior Court, in front of whom I argue on a regular basis, always say don't put too much in the reproduced record. We have the whole record. We'll look at the whole record. And so that's my inexperience, and I apologize. But it is part of the record. It is part of the record. That was, I believe, as I said, Exhibit N of the pre-hearing summary, which was in the record at the time the hearing was conducted by the ALJ. And, Your Honor, we believe that, well, as we said, number one, that the fact that the Board admitted that it had received the order in 1991 is certainly, and it admitted it twice, is certainly strong evidence. We know that the Board argues that, well, we didn't explain why we wrote this letter in 2001, but that was because we understood that that issue had already been resolved and had already been settled by the pre-hearing submission of the Board admitting that it had received this order in 1991. Any further questions at this point? Thank you. Thank you, Ms. Shull. You'll have your rebuttal here from the government. Mr. Preheim? Yes, Your Honor. Did I pronounce it correctly? Preheim, Your Honor. Preheim. Okay. Thank you. Go ahead. May it please the Court. You agree that this would be a qualifying order under the pre-1992 regulations, right? No, we don't. Even under the previous regulations, those regulations make clear that an order that's referring to other retirement benefits is not a qualified domestic relations order. I believe we noted that. The Board didn't decide it on that ground, right? That's right. That's right. So for purposes of this appeal, we should assume that under the pre-1992 regulations it would be qualifying? I'm not certain that that's correct, Your Honor. I think we don't know what would happen under the pre-1992 regulations. Okay. But my problem is how could the 1992 regulations be retroactive to an order that was entered in 1990? We have all these Supreme Court cases, Rivers and Landgraf and Green, which say that statutes and regulations aren't to be retroactive. And it strikes me that your argument is you're trying to make this regulation retroactive, this 1992 regulation retroactive to 1990. Well, we wouldn't characterize it as retroactive, Your Honor. It's not? Well, let me make a couple of points. First, Ms. Hayward hasn't raised that argument in her brief. But that being said, it's certainly reasonable for OPM to base this decision on the date when it receives the order as opposed to the date the order is entered. If you look at the Federal Register notice from July 29th of 1992 when OPM announced the final regulations, it's at 57 FEDREG 33570 at page 33571, OPM emphasized that a primary purpose of the new regulations is to make so those regulations would be designed for ease of use, OPM to be able to more easily apply the regulations. If OPM had to apply two different versions of the regulations That's not a very good reason for making something retroactive. And how is there any uncertainty? If you know what the date of the order is and you apply the regulations that were in effect at the date of the order, that's not a problem. Well, the problem is then you have two sets of regulations that you have to apply depending on the date of the order as opposed to setting a clear, bright-line cutoff date. And if I can make another point, Your Honor, which is it's also reasonable to require applicants for benefits to submit an order by the date the new regulations came into effect. OPM provided applicants with plenty of benefits. But you can't amend the order. Once the order is entered, that's it. You can't amend it. That's what OPM said. So if somebody drafts an order in 1990 under the current regulations, OPM comes in with new regulations in 1992. You're not allowed to amend that order, right? No, the order can be amended. It can't be amended with respect to a post-survivor retirement annuity. Well, in effect, we're talking about it can't be amended. But after the individual retires. So in this case, if she had submitted the order, Mr. Hayward didn't retire until 1996, I believe. If she had submitted the order and it had been rejected, then she could have had that order amended up to the date he retired. But if somebody retired and if the order had been entered in 1990, somebody retired in 1991, there's nothing you can do to amend the order, right? That's true. It strikes me as monumentally unfair. Well, but again, Ms. Hayward had, keep in mind the order was entered here March 26 of 1990. OPM announced in January of 1992 its proposed regulations. She had a full year after the regulations were announced. Well, it may be that she could amend it, but not everybody could. Well, that she could submit it. But it's still retroactive, isn't it? It's not retroactive. We're going to take regulations that didn't exist at the time the order was entered and we're going to judge the validity of the order by the later regulations. Why is that not retroactive? Well, what's important is that the party submit the order quickly after it's entered. No, no, but you're not addressing my question. It's retroactive to say that an order becomes invalid because of later adopted regulations. That sounds like retroactivity, doesn't it? Well, I'm not sure we're saying it becomes invalid. We're just saying that you apply the regulations that are in effect at the time that the order is submitted to OPM. As opposed to when it was drafted? That's right. That's called retroactivity. Well, but she, again, in this situation, she had plenty of opportunity to submit the order if she wanted the previous regulations to apply, and she didn't. She sat on her rights. One of the things Ms. Shaw said, she said that in the record there are two orders, one speaking to the military benefits, one to the civilian benefits. Do you agree with that? I would say that the record is inconclusive on that issue. I looked into it, and I was not able to find the order that apparently is directed at military benefits. That doesn't mean it doesn't exist. I didn't find it in the record. I didn't see it. It may be there, and I just missed it. But I was not able to locate it in the record. But obviously she's provided a citation to the record. I'll go back and look. She said I think it was tab N. That's right, to the pre-hearing submission. But that being said, keep in mind when OPM makes its decision, it doesn't have that order in front of it. It simply has the order that's submitted by Ms. Hayward. So it looks to the fore. Oh, no, I understand. Well, let me ask you this. Do you think that if, in fact, there were two orders, assume for the moment, and granted it's maybe an open question in terms of what the record contains, but assume for the moment that there were two orders, one speaking to military benefits, one, which is the one we have here, speaking to civilian benefits. Would that not perhaps be relevant in terms of making clear what each order speaks to? So that if you had, while this order standing alone is ambiguous because of the conflicting references, one to civilian benefits, then to military statutes, that ambiguity or uncertainty would drop away if you said both records, both orders in front of you so you could say, Aha, I know what they're talking about here, and I know what they're talking about here. The problem is that OPM, as directed by Congress, will only look to the four corners of the document that's submitted, and the benefit in that document must be expressly provided for. Well, isn't it in this document expressly provided? It's not. Well, if you look at 127, it says, Participants shall select the survivor benefit form that pays the largest monthly benefit, and on the next page it says, As a surviving spouse, the alternate payee will be entitled to any pre-return survivor annuity. I mean, doesn't that language suggest that the spouse is going to get a survivor annuity? The problem is that language refers to Title X, which provides for military retirement benefits, and in the Fox case, Well, not in C, it doesn't. Well, I don't believe that C actually mentions a post-retirement survivor annuity at all. It says, As a surviving spouse, the alternate payee will be entitled to any pre-retirement survivor annuity. Well, but, I'm sorry, you're looking at C, page 127? Page 128. A, 128. My C is on 127, Your Honor, I'm sorry. And C refers to Title X. Is it E that you're? No, it's 8C on page 128. Oh, 8C, I apologize. That refers to a pre-retirement survivor annuity, not a post-retirement survivor annuity. What's the difference? Well, presumably, C would apply if Mr. Hayward had died before he retired, a pre-retirement survivor annuity. A post-retirement survivor annuity applies if the individual passes away after they retire. The only language Ms. Hayward cites in support of her argument is 7C and 7E, page 127 and 128 of the appendix. 7C specifically references Title X, which applies to military retirement benefits. No, we understand that, but if that reference was to Title V, then the order would be fine. Is that the only error that's in the order? Is the reference to Title V versus the reference to Title X? Well, there are a number of references to Title X. No, I'm saying the order refers to Title X. If it referred only to Title V and not Title X, the order would be acceptable as drafted. Not under the current regulations because it still doesn't work. I'm not talking about the current regulations. I'm talking about the regulations in effect at that time, in 1990. I think in that situation, the case would have to be remanded to OPM to make a determination, looking at the four corners of the document. But hypothetically, let's go to the hypothetical terrain, the other world. If, in fact, the order referred to Title V exclusively and not to Title X, would it be acceptable under the 1990 regulations, hypothetically? I think the problem with that is that the order still is entitled the Qualified Domestic Relations Order, which is an ERISA term, and ERISA only applies to private pension and benefit plans. It doesn't apply to government plans. So by the face of the order, it suggests that it doesn't apply to government plans. So there would still be ambiguities in the order, is my point. And you're saying that because of those additional ambiguities, it would not be acceptable? Under that hypothetical, I think that's right. Mr. Fugate, let me ask you, take the present version of the regulations. Why would this fail to pass muster under that? Well, 838.803 requires a specific reference in the QDR Act to Section 838. There is no such reference. I know there's no dispute. There is no such reference to 838. And that was the ground of the Board's decision. That's right. The arguments you're making here were not adopted by the Board. Your arguments here as to why this wouldn't qualify under the pre-1992 regulations were not grounds of decision by the Board here. That's correct, because the Board didn't consider the pre-1992 regulations. The Board only considered the current version of the regulations because the Board found that the order was submitted in 2001. Now the AJ, the administrative judge, I guess Judge Svensson, she only considered the present version of the regulations, and yet she determined that there was enough here. That's correct. And she hung her hat on, I guess, some of the language that Judge Dyke and Judge Garza both pointed to. Is that correct? Yes. She focused on the fact that the order does, in fact, refer to a civil service retirement system on a couple of occasions. The problem with that is on at least six occasions it refers to Title X. That gets me. No. That's a very, very fair point, Mr. Preon. That gets me to what I was discussing earlier. If you had the other order in front of you, like we have this one, I'm just thinking out loud here, maybe I shouldn't do that, but wouldn't any sensible person looking at that say, okay, this person had a military career, had a civilian career. This is the civilian order. We know what they're talking about. This is the military order. Now the record's unclear on that, so I'm obviously speaking hypothetically. What's wrong with that? I think the problem with that is that Congress has mandated that the specific order at issue must expressly provide for the benefit, and there's nothing that permits opium to go outside the four corners of that. Now what about the gloss that we've put on that, that Fox and others, there doesn't have to be magic words, but you're saying that only applies to the old? No, no. In fact, we think Fox and Schneider were both decided on the current version of the regulations. What Fox and Schneider held is that if specific language, magic words are not present, if an order can fairly be read as providing for an annuity, then the claimant will get the benefit. The question is, well, what does fairly be read mean? In Fox, there was no reference to the statutory site that you say is indispensable, and yet the court seemed to think that you could find sufficient language in there to award the survivor annuity. That's right, but a key part of the Fox decision is the fact that there was no other plan or benefit that the annuitant could have obtained payments under. Here, there's no dispute that Mr. Hayward is eligible for, and in fact is receiving a military retirement benefit. Yeah, but that seems again to be rewriting the board's decision, because the board said there is a magic words requirement. You've got to cite the statute. They didn't cite the statute in. That's the basis for the board decision. The board's decision also goes on to say that the language of the order is ambiguous as well. Under Fox and Schneider, if the language is ambiguous, and Fox specifically noted also that if the language of the order refers to another plan or another benefit, such as a military retirement plan, it can't fairly be said to provide for the benefit. Based on that language in the decision and applying it to the order here, it's clear that Ms. Hayward is not entitled to a post-retirement survivor annuity. I'm confused. I thought you were telling me earlier that they hadn't decided this other argument that you were making here today. We read the board's decision as holding first, of course, that the specific language required is not present, but moreover. The cites are not present. That's right, yes, to 838. But moreover, that the order itself is ambiguous. Where does it say that? I believe at the end of the decision. Well, I think it's saying that it's ambiguous because it doesn't have the right cite in it. No, the board specifically noted that there were citations not just to civil service retirement system, but also all these citations to Title X and to ERISA. And because of that, the board said we don't know which plan this is referring to. You're talking about Paragraph 8? Paragraph 18 of the order. Page 26. Sorry, page 26 of the appendix, Your Honor. Page 26 of the order. Page 8, I guess. Paragraph 18. Take your time, Mr. Grant, because one question was what's in the board's order, and the other question was what's in the board's order. I'm asking a question about what's in the board's order, and Judge Doris is referring to the qualified, the QDRO. So take your time. We'll extend your time, so take your time to sort out what you're looking for. To answer, Judge Dyke, your question at page A110, that's the final decision of the board. Paragraph 18, in sum, because the 1990 state court order is ambiguous, it does not provide for a former spouse annuity. Yeah, but referring back to the prior paragraph, it says instead of containing the appropriate and necessary references to Part 838, it cites ERISA, Internal Revenue Code, and other statutes. Because the order makes no reference to 838, it does not meet the requirements. It seems that the finding of ambiguity seems to rest on the failure to cite the right statute. Well, we think that's part of it, but also paragraph 14, page 108, the board said, well, in light of paragraph 13, the board cites various languages in the order. Paragraph 14, the board says, in light of this language, the state court may have intended to award the appellant a former spouse annuity under CSRS while citing the incorrect statutes and mistakenly failing to refer to Part 838. On the other hand, the state court may have intended to award the appellant survivor benefits under the intervener's military retirement plan. And that brings up the point I was saying. You know that if, in fact, there's another order out there that speaks to the military benefits, you can look at this and you know that this order is speaking. That ambiguity drops away, doesn't it? Because we can't blind ourselves to the realities. I mean, there's no question that in this order, if there are two orders out there, they were seeking to award benefits under the civilian system. If there wasn't another order out there, I think there may not be another order out there. That's an open question in the record. But if there's not another order out there, I think there's a considerable amount of force to what the board says. But if there's another order out there, are we not in a situation where you look at this and say, wait a minute, you know what they're talking about. You see what I'm saying? It's just man-to-man here. I understand Your Honor's question. I can only say back to the language of the statute as mandated by Congress that the order at issue must expressly provide for the benefit. But if we're saying, if we've said you don't have to have magic words… That's right, but the order still must fairly be read to provide for the benefit. And this Court has said that an order that references other retirement plans, such as military retirement plans, cannot fairly be read to provide for a benefit. There really is a clear error in establishing that the section referring to Section 10 was really Section 5 or Title 5 instead of Title 10. That's pretty clear on the face of the order that there was an error. Why isn't that really a requirement from you saying it has to reference a Title 5 and a Title 10? It must, even though the order itself says a civilian program, retirement program. Again, we don't know, as the board held, we don't know if the error was, as Your Honor is suggesting, a miscite to Title 10, or if the error in the order was a miscite or miscites to civil service retirement system. We don't know the answer to that. And because of that, the order can't be said to expressly provide for the benefit. Thank you. You've gotten some tough questions. These are difficult cases because, on the one hand, you have, quite properly, you have to represent the government's position with respect to what the regulations require, and there's a lot of good policy reasons behind that so that the OPM is not in the position of trying to discern what is or isn't in a particular thing. So the panel fully understands the government's legitimate position in that regard, and your unhappy role here today is that you've been faced with a case where there's some sympathetic circumstances and some unusual circumstances on the other side. So you've done a good job of representing the government's position in the face of some tough questioning there. We'll hear from Ms. Shaw now. Thank you again. And you'll have your full time, Ms. Shaw. I think if one thing if you could do, I'll just say before you start, if you could provide to the court that other order that you say exists, and for purposes of the argument we've taken, your representation is correct as to what the record contains. If you could provide that to the court and also provide that to Mr. Prehan. Yes, Your Honor. Okay, well, go ahead. You have your full five minutes. Along that line, let's assume that the order is as you describe it. Mr. Prehan says we can't look at it, and the board can't look at it, OPM can't look at it, that the statute says you can only look at the actual order you're relying on and not the companion order. What's your response to that? Well, Your Honor, the administrative law judge had in front of her both orders, and she listened to the testimony of both witnesses. She had no difficulty discerning. Your Honor, what I'm asking you is a legal matter. What case addresses this question of whether we can look to a companion order? You may not be aware of a case. I have, right, I have my list of cases in front of me, and that I'm not certain that I actually saw a case that involved two separate orders that were entered essentially on the same day. I mean, this was not a point that was, I will confess in fairness to both you and Mr. Prehan, this was not an issue that was raised, it appears at least, before the board, but it just was a point that struck me from looking at the order that we had and seeing references in the Pennsylvania court decisions to orders with an emphasis on the S. Yes. It might be helpful for the parties to give us any authority on that question, if there is authority. I have that in my hotel room, and I'll certainly provide it to the court and to Mr. Prehan. But with regard to this order, as Judge, I believe, Gajarza indicated, if you look at A131 of the appendix, section 18 of the order in question, the plan to which this order applies is the civil service retirement system pension plan in which Jack Hayward is a participant or any successor or transferee plan. It's true that throughout the order there were other references to the plan, but 18 is very clear. This order refers to the order, the plan to which the order applies, is a civil service retirement system pension plan. Except that I have one question. You said you reviewed the order after it was prepared by the experts, and paragraph 11 of the order specifically states that the between spouses and former spouses in actions for divorce in the federal statute, title 10 U.S.C., section 1408, which authorizes military retired or retained pay to be distributed to the former spouse. Now, did you check that statutory section? Your Honor, I did not. I relied upon my expert. No, you did not check it. You didn't pull it out of the books and say, well, this refers only to military pensions? Absolutely not, Your Honor. I relied on the expert who prepared the order. Does the Court have any other questions? I would just say, Ms. Shaw, if you could, again, provide the other order, the military benefits order, to the Court and also to Mr. Preheim. And I think it would be helpful if, by the close of business two weeks from today, if each counsel would provide us with any authority that exists on the question of looking to a parallel order. That may not be the best way to describe it. But I think you both, you and Mr. Preheim, both know what we're talking about here. In other words, the effect, if any, of two orders sitting side by side, to what extent is it proper for OPM and or the Board to examine that other order to decide what the order under issue is? Right. Your Honor, in fact, it was. Do you understand that? Yes, I do. Mr. Preheim, is that? It makes it clear that I will have to clearly understand what OPM can look at and MSPB can look at in arriving at a decision. So if by the close of business two weeks from today, is that enough time? That's certainly sufficient time. Your Honor, you would want that exhibit N set together? As soon as you have it. Right. I'll do that. But the supplemental authority letter you have until, I guess it would be two weeks from today, would be the 22nd. That's excellent. Thank you very much. Thank you. Ms. Shaw, thank you. Ms. Preheim, thank you. The case is submitted.